NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0856n.06

No. 13-1253

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 01, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARY C. VANDENHEEDE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| FRANK B. VECCHIO; FRANK A. | ) | EASTERN DISTRICT OF MICHIGAN |
| BORSCHKE; BUTZEL LONG, A | ) | |
| Professional Service Corporation; and | ) | |
| DOEREN MAYHEW AND CO., P.C., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: COOK, GRIFFIN, and KETHLEDGE, Circuit Judges

COOK, Circuit Judge. Plaintiff Mary C. Vandenheede sued defendants Frank B. Vecchio and Frank A. Borschke, as well as their respective law and accounting firms, Butzel Long and Doeren Mayhew and Co., P.C., alleging tax fraud under 26 U.S.C. § 7434, civil conspiracy, intentional infliction of emotional distress, and breach of contract. The district court granted defendants judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on all counts, and Vandenheede appeals. She also asks this court to remand to the district court for consideration of a sanctions motion she filed against Vecchio and his firm. For the following reasons, we AFFIRM the district court's judgment.

I.

This litigation arises from a dispute between the trustees of the Donald J. Chinn Trust ("Trust") and Vandenheede, Chinn's longtime girlfriend, regarding whether substantial payments by the Trust to Vandenheede qualified as taxable income. According to the complaint, Chinn paid his and Vandenheede's living expenses from this revocable trust. (Compl. ¶ 17.) Vecchio and Borschke, Chinn's attorney and accountant, became trustees when Chinn was diagnosed with dementia, and they filed 1099-MISC forms for tax years 2006 and 2007, showing that the Trust paid Vandenheede more than $110,000 in "non-employee compensation" during those years. (*Id.* ¶¶ 14, 18.) The 1099s information returns reporting payments of income to the IRS prompted the IRS and the Michigan Department of Treasury to assess her taxes and penalties; she has since succeeded in abating the federal taxes. (*Id.* ¶¶ 36, 46 47.) Chinn died in 2009, and Vandenheede filed this action in May 2012 after Vecchio and Borschke refused to correct or retract the filings.

Vandenheede's tax fraud, civil conspiracy, and intentional infliction of emotional distress claims challenge the propriety of defendants' filing the 1099s and their refusal to file retractions. She characterizes these tax filings as fraudulent because the trustees knew: (1) of her long-term relationship with Chinn; (2) that the "payments . . . were for the benefit of . . . Chinn, not of [Vandenheede]"; (3) that Chinn paid her living expenses and bought her a house; and (4) she "never performed compensated services for . . . Chinn" during their relationship. (*Id.* ¶¶ 12 13, 15 17, 20 26.) She also alleges "detrimental reliance/breach of contract," claiming that Vecchio

"individually and as trustee of the Donald J. Chinn Trust" reneged on a promise to reimburse her for attorneys' fees related to the drafting of a prenuptial agreement. (*Id.* ¶¶ 75  77.) In that regard, she alleges that "the intermeddling Vecchio" requested the prenuptial agreement "[t]o prevent . . . Chinn and [her] from marrying." (*Id.* ¶ 51.)

The district court granted defendants judgment on the pleadings on all counts, finding that: (1) as a matter of law, Chinn, not the trustees, qualified as the "filer" of the 1099s, defeating the § 7434 tax fraud claim against the trustees; (2) the state-law claims for conspiracy and intentional infliction of emotional distress were time-barred; (3) Vecchio's representative capacity as Chinn's attorney precluded an independent claim against him for breach of contract; and (4) Michigan law precluded Vandenheede, a non-client, from suing the accounting firm Doeren Mayhew. Vandenheede appeals.

II.

We give fresh review to a Rule 12(c) judgment on the pleadings, utilizing the same pleading standard applicable under Rule 12(b)(6). *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 846 (6th Cir. 2012). To survive an adverse judgment, then, the complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bartholomew v. Blevins*, 679 F.3d 497, 499 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Rule 9(b)'s heightened pleading standard applies to Vandenheede's tax-fraud claim. *See* Fed. R. Civ. P. 9(b). Her complaint therefore "must state with particularity the circumstances constituting

fraud." *Id.* "Although 'conditions of a person's mind may be alleged generally,' Fed. R. Civ. P. 9(b), the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (second quotation omitted). The Rule requires the plaintiff: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Id.*; *see also Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) ("[A]t a minimum, Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." (citation and internal quotation omitted)).

In determining the sufficiency of the complaint, we confine our review to the pleadings, exhibits attached to or addressed in the complaint, documents included with a motion to dismiss if referenced in the complaint, and public records. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 81 (6th Cir. 2011). We may affirm the district court's judgment on alternative grounds supported by the record or pleadings. *See, e.g.*, *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669, 676 (6th Cir. 2011); *Murphy v. Nat'l City Bank*, 560 F.3d 530, 535 (6th Cir. 2009).

*A. Tax Fraud Under § 7434*

The relevant tax code provision states:

**Civil damages for fraudulent filing of information returns**

(a) **In general.**--If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.

26 U.S.C. § 7434(a). The question posed to the district court was who "filed" the returns, the trustees who prepared the documents or the taxpayer Chinn.

Looking to the related provision governing untimely and incorrect information returns, 26 U.S.C. § 6721, and its implementing regulation's definition of "filer" as the "person that is required to file an information return," 26 C.F.R. § 301.6721-1(g)(6), the district court concluded that Chinn—and not the preparers of the documents—"filed" the return as a matter of law, because "the tax consequences, if any, of the 1099-MISCs ran directly to Donald J. Chinn, who reported all income and deductions of his trust on his personal income tax returns." Vandenheede counters this, maintaining that Vecchio and Borschke, by preparing and submitting the documents for the Trust, filed the 1099s, and that the district court's narrow interpretation of § 7434 shields trustees from its tax-fraud proscriptions.

We resolve this appeal on the more direct path noted by the district court in dismissing other claims in this case: the absence of particularized allegations demonstrating fraud. (*See* R. 42, Op. & Order at 7 (explaining that plaintiff "does not claim fraud or intentional misrepresentation by

Doeren Mayhew . . . with the requisite particularity").)  The tax-code provision governing these information returns states in pertinent part:

> **(a) Payments of $600 or more.**--All persons engaged in a trade or business and making payment in the course of such trade or business to another person, of rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable gains, profits, and income (other than [excluded payments covered by other tax code provisions]), of $600 or more in any taxable year . . . shall render a true and accurate return to the Secretary, under such regulations and in such form and manner and to such extent as may be prescribed by the Secretary, setting forth the amount of such gains, profits, and income, and the name and address of the recipient of such payment.

26 U.S.C. § 6041(a).  This broad provision, used by the government to verify incomes for purposes of assessing and collecting taxes, does not require an employer-employee relationship.  *Marlar, Inc. v. United States*, 151 F.3d 962, 968 (9th Cir. 1998).  The challenged information returns in this case identified the payments to Vandenheede as "nonemployee compensation."  Vandenheede denies ever performing compensated services for the Trust or Chinn, and the trustees defend that they lacked authority to issue Trust funds as gifts, so they needed to record the payments to Vandenheede as income.  Yet, because Vandenheede's § 7434 claim alleges fraud, her pleadings must do more than establish an accounting mistake.

Section 7434(a) prohibits the "willful[] fil[ing]" of "a fraudulent information return with respect to payments purported to be made to any other person."  As Vandenheede acknowledges, willfulness in this context "connotes a voluntary, intentional violation of a legal duty."  (Appellant Br. at 35.)  Tax fraud typically requires "intentional wrongdoing."  *See Maciel v. Comm'r*, 489 F.3d

1018, 1026 (9th Cir. 2007); *Granado v. Comm'r*, 792 F.2d 91, 93 (7th Cir. 1986) (per curiam).  At the motion to dismiss stage, then, the complaint must contain specific allegations supporting a plausible inference that Vecchio and Borschke willfully filed false information returns.  *Republic Bank & Trust Co.*, 683 F.3d at 247.  It does not.

To begin with, the complaint does not specify *how* the Trust made the payments to Vandenheede after Vecchio and Borschke became trustees or *what* exactly the payments were for. Rather, it vaguely asserts that: (1) Chinn previously "paid his living expenses, and those of Plaintiff, from the . . . Trust" (Compl. ¶ 17); (2) the new trustees "continued paying . . . Chinn's living expenses from the . . . Trust" (*id.* ¶ 19); and (3) that the "payments" to Vandenheede "were for the benefit of . . . Chinn, not of Plaintiff" (*id.* ¶ 25).  Vandenheede's briefing, which may not supplement the pleadings, adds little clarity regarding the money she received, arguing at different points that the Trust payments were for her benefit, mostly for Chinn's benefit, living expenses for either, and gifts.  Though she notes that she succeeded in abating her federal taxes, she offers no judicial or administrative finding supporting her challenge to the information returns.  Moreover, she does not suggest a different or preferable way that the trustees should have categorized the payments for tax purposes or who (other than her) should have suffered the tax consequences.[1]

---

[1]The federal tax code generally holds the donor liable for gift taxes, *see* 26 U.S.C. §§ 2501 2502, but the donee becomes personally liable for the tax if not timely paid by the donor, *see* 47B C.J.S. Internal Revenue § 502.

Her complaint also fails to include specific facts supporting an inference of scienter   i.e., that Vecchio and Borschke willfully filed fraudulent information returns.  In this regard, she alleges only that the trustees *knew* she "never performed compensated services" for the Trust or Chinn. (Compl. ¶ 26.)  But this allegation carries little weight, because, as noted above, she specifies no alternative take on how and for what the money was paid.  Expanding on her complaint, Vandenheede's appellate brief alludes to the "substantial economic motive" of Chinn's non-party children and the trustees' firms.  Yet even if we could consider these supplemental allegations, *see Rondigo, L.L.C.*, 641 F.3d at 680  81, they fail to provide particularized facts from which one could infer that defendants knowingly issued false notices to the taxing authorities.  Finally, her conclusory allegation that Vecchio prevented her from marrying Chinn by requesting a prenuptial agreement, discussed more fully below, does not evince fraud in the filing of the 1099s.

In any event, her complaint acknowledges that Vecchio and Borschke maintained that they lacked the "authority to make gifts from the . . . Trust." (*Id.* ¶ 30.)  The Trust itself, identified in the complaint and included in the trustees' motions, supports their position.  It authorizes them to "distribute . . . or apply for [Chinn's] benefit such amounts of net income and principal, even to the extent of exhausting principal, as the Trustee believes desirable from time to time for [his] health, support in reasonable comfort, best interests and welfare, considering all circumstances and factors deemed pertinent by the Trustee." (R. 20-2, Trust art. II(A) "Distributions to Me.")  For others, though, it only authorizes them to "distribute . . . such amounts of net income and principal as [Chinn], if not disabled as determined . . . [under this instrument], may from time to time direct in

writing." (*Id.* art. II(B) "Power of Withdrawal.") Vandenheede neither disputes these Trust terms nor asserts that Chinn made written requests for her to receive the payments. In fact, she fails to point to authority enabling (let alone obliging) the trustees to continue paying her substantial sums of discretionary money.

Nevertheless, her complaint conclusorily asserts that "[o]bviously . . . Chinn intended that the . . . Trust pay his living expenses, and those of Plaintiff" (*id.* ¶ 31), suggesting that "[i]f [the trustees] had any doubts about the legal authority to make payments from the . . . Trust, they should have sought direction from the Probate Court" (*id.* ¶ 33). Her appellate brief goes one step further, proposing that the trustees could have "ceased" paying her altogether until they received guidance. (Appellant Br. at 50.) In her view, the trustees *could* have rationalized the payments as either gifts or, "if the trustees were not authorized to make gifts from the Trust for Ms. Vandenheede's benefit," an "unauthorized payment." (*Id.* at 50 51.) Before the district court, plaintiffs' counsel offered even a third categorization: income, just not in a "trade or business." (R. 46, Hr'g Tr. at 21.)

If, as she says, the trustees could have classified the payments as gifts, income, or unauthorized payments to justify their disbursement of Trust funds, it stands to reason that the Trust could report the payments accordingly for tax purposes in good faith. And if, as she admits, the money "w[as] for the benefit of . . . Chinn, not of Plaintiff," a person reasonably could conclude that she performed a caregiving service "for [Chinn's] health, support in reasonable comfort, best interests and welfare." (R. 20-2, Trust art. II(A).)

Today's opinion decides neither the veracity nor the accuracy of the trustees' justification for classifying the payments as "nonemployee compensation." Rather, we conclude that Vandenheede fails to present particularized allegations supporting the inference that they willfully filed fraudulent information returns. Absent a well-pleaded foundation, we do not credit appellant's conclusory fraud claim, and we affirm the district court's judgment.[2]

B. *State Law Claims and the Statute of Limitations*

With regard to the state-law claims for conspiracy and intentional infliction of emotional distress, which accrued upon the filing of the 2006 and 2007 information returns, *see* Mich. Comp. Laws § 600.5827, the district court correctly found them time-barred under Michigan's three-year statute of limitations, *see* Mich. Comp. Laws § 600.5805(10). Vandenheede does not dispute the filing of the challenged forms more than three years before she filed her complaint in May 2012. (*See* R. 19-14, 02/19/2007 Letter of Robert L. Litt (alerting plaintiff and defendants to problems with the 2006 form in February 2007).) As the district court correctly noted, the Michigan Supreme Court recently abrogated the "continuing violation" doctrine, finding it "contrary to the language of § 5805." *Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 662 (Mich. 2005). Nevertheless, Vandenheede persists with a "continuing violation" argument, and attempts to

---

[2]Without a viable federal claim, we abjure resolving the dependent Supremacy Clause argument concerning Vandenheede's claims against Doeren Mayhew. We likewise bypass her due process and Seventh Amendment claims as forfeited in the absence of any developed argument. *See, e.g.*, *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 360 n.5 (6th Cir. 2013).

distinguish *Garg* on the facts. The Michigan Supreme Court did not so limit its holding, and neither may we. That Vandenheede retained counsel and counsel sent cease-and-desist letters to defendants in 2012 does not reset the limitations clock.

## C. Promissory Estoppel Claim Against Vecchio

On appeal, Vandenheede recharacterizes her "detrimental reliance/breach of contract" claim as one for promissory estoppel, and she argues that the district court prematurely made factual findings on the pleadings in concluding that "[a]ny promise made by Vecchio [regarding payment of attorneys' fees] would have been a representation made on behalf of his client Mr. Chinn, not one made on his own personal behalf." In view of her pleadings, we discern no error.

The complaint acknowledges that Vecchio represented Chinn "[t]hroughout the time" she dated Chinn, or from 1992  2009. (Compl. ¶¶ 11, 14.) It further avers that "Vecchio, individually and as trustee of the . . . Trust, told [her] to have a prenuptial agreement prepared, and that if she did so he would reimburse her the attorney fees." (*Id.* ¶ 75.) These allegations reflect Vandenheede's understanding that Vecchio served in a representative capacity for Chinn and the Trust, a fact that she does not contest on appeal.

Michigan's courts recognize that an agent acting on the behalf of a disclosed principal does not become a party to a contract absent facts demonstrating that the attorney intended to become a party to the contract. *See, e.g.*, *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 315 (6th Cir.

No. 13-1253
*Vandenheede v. Vecchio et al.*

1998); *Uniprop, Inc. v. Morganroth*, 678 N.W.2d 638, 641  42 (Mich. Ct. App. 2004); *Riddle v.*

*Lacey & Jones*, 351 N.W.2d 916, 919  20 (Mich. Ct. App. 1984).  For instance, the court in *Riddle*

affirmed the dismissal of a promissory-estoppel claim against the attorney of a disclosed principal

because "[a]ny promise made by the [attorney] was clearly made on behalf of his principal." *Riddle*,

351 N.W.2d at 920.  In reaching this conclusion, the court relied on § 320 of the Restatement

(Second) of Agency and its commentary:

> We also find plaintiff's complaint to be deficient based upon principles of agency law
> as summarized in 2 Restatement Agency, 2d, § 320, p 67:

>> "Unless otherwise agreed, a person making or purporting to make a
>> contract with another as agent for a disclosed principal does not
>> become a party to the contract."

> Comment (a) to § 320 explains, in pertinent part:

>> "Whether or not a person purporting to act as agent for another
>> becomes a party to the contract depends upon the agreement between
>> such person and the other party. See § 146. As stated in Section 4, *a*
>> *principal is disclosed if, at the time of making the contract in*
>> *question, the other party to it has notice that the agent is acting for*
>> *a principal and of the principal's identity*. One who purports to
>> contract on behalf of a designated person does not manifest by this
>> that he is making a contract on his own account, and only where he
>> so manifests does the agent become a party to the contract which he
>> makes for the principal.  *In the absence of other facts, the inference*
>> *is that the parties have agreed that the principal is, and the agent is*
>> *not, a party.*"

*Id.* at 919 (emphasis in *Riddle*).

Although the complaint refers to Vecchio as "intermeddling" and faults him for preventing her marriage to Chinn, it offers no facts supporting a plausible inference that Vecchio acted in any capacity other than a representative capacity in requesting the prenuptial agreement and offering to pay for related fees. Her appellate briefing again attempts to fill in these gaps by alleging ill will harbored by Chinn's children and arguing that the trustees' firms viewed Chinn's company as an important client, but these allegations neither appear in the complaint nor speak to her claim against Vecchio. Absent well-pleaded facts supporting a plausible claim that Chinn's attorney individually promised to pay Vandenheede's legal fees, we affirm the district court's judgment.

III.

For these reasons, we AFFIRM the district court's judgment and remand for proceedings consistent with this opinion.