# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 12, 2016        Decided June 21, 2016

No. 15-7016

RENE ARTURO LOPEZ, ET AL.,
APPELLANTS

v.

COUNCIL ON AMERICAN-ISLAMIC RELATIONS ACTION
NETWORK, INC.,
APPELLEE

———

Consolidated with 15-7019

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:10-cv-00023)
(No. 1:10-cv-00022)

———

*David Yerushalmi* argued the cause for Appellants. With him on the briefs was *Robert Joseph Muise*.

*Jenifer Wicks* argued the cause and filed the brief for Appellee.

Before: SRINIVASAN and WILKINS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

This appeal arises out of the bad acts of Morris Days (a/k/a Jamil Days), who held himself out to the public as a civil rights attorney working for a regional chapter of the Council on American-Islamic Relations Action Network ("CAIR" or "CAIR National"), when he was not, in fact, a lawyer. The Maryland/Virginia regional CAIR chapter had hired Days to serve as its civil rights manager, and eventually Days also took up the role of resident attorney. Days took money from CAIR clients in exchange for the promise of legal services, but performed none. Plaintiff-Appellants in this consolidated action are individual CAIR clients who were negatively impacted by Days's conduct. Their lawsuits allege, *inter alia*, that CAIR is responsible for the bad acts of Days because Days was CAIR's agent. The District Court disagreed and granted summary judgment to CAIR National.

This Court has jurisdiction to review the final decision of the District Court under 28 U.S.C. § 1291. For the reasons set forth below, we reverse the District Court's grant of summary judgment, and remand for further proceedings.

**I.**

CAIR is a national organization based in Washington, D.C. that works to protect the civil rights of Muslims living in the United States. This work sometimes involves providing legal services. The organization has affiliated local and regional chapter offices, which exist as independent non-profits. Local chapters come into being through a written application process, submitted to the national headquarters, through which CAIR can either grant or deny affiliation. The regional chapter serving Maryland and Virginia was granted approval by the national organization in 2002. Its operations were initially based in Bethesda, Maryland, but eventually

moved to Herndon, Virginia. The chapter has been alternately referred to in the public as CAIR-MD/VA or CAIR-VA.

During the relevant time period, CAIR-VA's day-to-day operations were supervised by Khalid Iqbal, the chapter's executive director and an employee of CAIR National. Iqbal was the director of operations for CAIR National, which paid his salary, but served simultaneously as the executive director of the regional chapter at CAIR-VA, on a volunteer basis. Because CAIR National paid Iqbal's salary, Iqbal was considered a sort of in-kind donation from the national organization to the chapter.

Morris Days began working as a volunteer at CAIR-VA in approximately June 2006. After volunteering for some time, Days approached Iqbal seeking full-time employment by the chapter. Iqbal recommended to the CAIR-VA Board that they hire Days, and in January 2007, Days began working as an independent contractor for CAIR-VA's Civil Rights Department, as civil rights manager. Iqbal was Days's immediate supervisor.

Days was initially hired to perform non-legal advocacy for clients who alleged that they faced religious discrimination; this work included making phone calls, writing letters, and referring clients to attorneys when appropriate. It did not require Days to hold a law degree or a license to practice law. Yet, as time passed, Days started to misrepresent to CAIR, to the public, and to his CAIR-VA clients, that he was an attorney and was licensed to practice law. Days then began requesting and accepting fees for the legal services he claimed to be performing – despite CAIR-VA's policy not to take money from its civil rights clients.

Days later admitted that he used this money for his personal enrichment.

Iqbal first learned that Days was violating the organization's policy against accepting money from CAIR-VA clients in July 2007, when he received a complaint that Days had accepted money for a client's immigration case, but then had been non-responsive to the client. Iqbal sent an email to Days, seeking an explanation and asking Days to help develop a policy going forward for taking on cases. On or around October or November 2007, Iqbal learned that Days had again taken money from a CAIR-VA client. Following this discovery, Iqbal confronted Days and instructed him to return the money. Iqbal conducted no other investigation into Days's misconduct at that time.

Despite Iqbal's prior warnings to Days not to take money from clients, around January 2008, Iqbal discovered that Days had again received funds from an individual who had come to CAIR-VA for legal assistance. Iqbal again confronted Days, again instructed Days not to accept money from clients, and gave Days a written warning. But the very next week, in early February 2008, Iqbal received a report that Days had solicited funds from yet another individual. Following this discovery, Days was barred from entering the CAIR-VA office, his office keys were taken from him, and he was informed that his relationship with CAIR was terminated effective immediately.

It was only after Days was fired that CAIR started to inquire regarding his status as an attorney. After discovering that Days was not a lawyer, CAIR took possession of CAIR-VA's civil rights case files, as CAIR-VA no longer had anyone that could handle the matters. CAIR had its own personnel review the files. Once CAIR National's staff had

reviewed all of the files, Iqbal then informed the individuals with open cases that Days was no longer with CAIR-VA, and recommended attorneys with whom those individuals could consult regarding their cases.

At various times during Days's employment at CAIR-VA, each of the Plaintiffs approached Days in search of legal counsel. Unsurprisingly, Days did not perform the legal work promised. Plaintiffs allege that they have suffered financial loss and emotional distress as a result of this action. CAIR filed a motion for summary judgment, and Plaintiffs opposed, asking the court to treat their filing as a *de facto* cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(f). The District Court granted CAIR's motion for summary judgment and denied Plaintiffs' cross-motion, holding that the Plaintiffs had failed to raise a genuine issue of material fact regarding whether Days was the agent of CAIR National.

## II.

We review the District Court's grant of summary judgment *de novo*. *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor. *See Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). The evidence presented must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Holcomb*, 433 F.3d at 895. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "[M]ateriality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In conducting our analysis, we review the record taken as a whole. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). "We are not to make credibility determinations or weigh the evidence." *Holcomb*, 433 F.3d at 895; *see Liberty Lobby*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## III.

As the District Court held below, Virginia law applies to the Plaintiffs' tort claims. *See Lopez v. Council on American-Islamic Relations Action Network, Inc.*, 741 F. Supp. 2d 222, 235 (D.D.C. 2010). In Virginia, an agency relationship may be established by one of two theories: (1) actual agency; or (2) apparent or ostensible agency. *See Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 218 (4th Cir. 2015). The Plaintiffs are only pursuing their claim under a theory of actual agency. Accordingly, we must determine if the Plaintiffs have raised a genuine issue of material fact as to

whether an actual agency relationship existed between Days and CAIR National.

Actual agency is established when one person (the principal) manifests consent to another person (the agent), that the agent "shall act on his behalf and subject to his control," and the agent likewise manifests "consent so to act." *Reistroffer v. Person*, 439 S.E.2d 376, 378 (Va. 1994); *accord Wynn's Extended Care*, 619 F. App'x at 218. "The question of agency *vel non* is one of fact for the fact finder unless the existence of an agency relationship depends upon unambiguous written documents or undisputed facts." *Reistroffer*, 439 S.E.2d at 378; *cf. Ashland Facility Operations, LLC v. NLRB*, 701 F.3d 983, 990 (4th Cir. 2012) ("Generally, whether an agency relationship exists is a factual determination.").

Plaintiffs point to a number of facts that they believe support a reasonable inference that Days was CAIR's agent. To begin with, Plaintiffs have asserted that Days manifested consent to serve as CAIR's agent by expressly stating to them that he was an attorney for CAIR, not just for CAIR-VA. Taking the evidence in the light most favorable to the Plaintiffs, there is no reason not to take this as true; indeed, CAIR does not challenge whether Days manifested *his* consent to serve as CAIR's agent. The question then remains to what extent, if any, CAIR National manifested *its* consent that Days was to act on CAIR's behalf, and subject to CAIR's control. *See Reistroffer*, 439 S.E.2d at 378. While such manifestation may be made directly or indirectly, it nonetheless must be made *by* the principal *to* the agent. The Plaintiffs have presented sufficient evidence in this case to raise a genuine issue of material fact as to whether CAIR National manifested its consent to Days that he was to act on CAIR's behalf, and subject to CAIR's control.

## A.

The manifestation of assent to action by the agent with legal consequences for the principal "may be made directly by the principal to the agent or may reach the agent through a more circuitous route." RESTATEMENT (THIRD) OF AGENCY § 3.01 cmt. b (AM. LAW INST. 2006). "A person manifests assent or intention through written or spoken words or other conduct." *Id.* § 1.03. Where there is no direct evidence of an agency relationship, circumstantial evidence may be relied upon. *See Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*, 560 S.E.2d 246, 250 (Va. 2002) ("[D]irect evidence is not indispensable—indeed frequently is not available—but instead circumstances may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject matter of the contract." (quotation marks omitted)). Precisely what evidence will be sufficient to establish agency in a given case "must be determined in view of the facts in each particular case." *Id.* (quotation marks omitted). Plaintiffs have presented sufficient evidence that, viewed together, could provide a reasonable basis for a jury to conclude that CAIR National had manifested its consent for Days to act on its behalf, specifically: (1) CAIR's web publications relating to Mr. Days; (2) CAIR's handling of Days's case files both before and after discovering the full extent of his fraud; and (3) CAIR's statements regarding the organization's decision to provide financial settlements to some of the affected individuals.

First, Plaintiffs point to news articles that CAIR publicized on its website relating to Days's work, which refer to Days as a CAIR lawyer. Notwithstanding that these articles were published after Days started working for CAIR, and after the Plaintiffs initiated their individual relationships with Days, Plaintiffs contend that this is corroborating

evidence indicating CAIR's earlier manifestation of consent. Plaintiffs also argue that CAIR's intent can be inferred from the fact that Days showed them other publications by CAIR, similarly lauding Days as a CAIR attorney. Such publications could certainly support an inference that CAIR National had, at some point, made a decision to advertise the work that Days was doing, thereby associating CAIR National with Days and his work. Viewing the evidence in the light most favorable to the Plaintiffs, this is not an unreasonable inference.

It would also not be unreasonable to conclude that CAIR National manifested consent for Days to act on its behalf based on CAIR's conduct with respect to the civil rights cases opened and handled by the CAIR-VA chapter. Information regarding all of the CAIR-VA cases that Days worked on was entered into a central database, which was maintained by CAIR National. One could infer that, because CAIR tracked the status of cases handled by its affiliates, the national organization had some stake in the outcomes of those cases. In other words, the successes or failures of CAIR-VA reflected in some meaningful way upon CAIR National. Further substantiating such a view is the fact that CAIR took possession of all of the client files that belonged to CAIR-VA after the chapter was dissolved, and had its own personnel go through and review the files. A jury could reasonably view these facts as supporting the conclusion that CAIR had manifested its consent for Days to act on its behalf, and considered the work that Days did on behalf of CAIR-VA as an extension of the work of CAIR National.

Finally, Plaintiffs argue that CAIR National's consent to have Days act on its behalf is evidenced by the fact that CAIR compensated some of the victims of Days's fraud. As CAIR's corporate designee testified, CAIR paid settlement

money to some of Days's clients because the organization was "trying to right a wrong that was done by one of our employees." J.A. 1287-88. Whether or not Days was technically an employee or an independent contractor for CAIR-VA, this testimony is evidence that a reasonable jury could rely on in concluding that CAIR National did, in fact, view Days as acting on the organization's behalf.

**B.**

Plaintiffs have also presented evidence that a reasonable jury could rely on to conclude that CAIR National maintained the power to control Days, and Days was thus CAIR's agent. The power to control is a critical factor in determining whether an actual agency relationship exists under Virginia law. *See Wynn's Extended Care*, 619 F. App'x at 218 ("In deciding whether an actual agency exists, 'the power of the alleged principal to control is the determining factor in ascertaining the alleged agent's status.'" (quoting *Allen v. Lindstrom*, 379 S.E.2d 450, 454 (Va. 1989) (brackets omitted)); *see also Reistroffer*, 439 S.E.2d at 378 (power of control is an important factor).

The element of control in this context refers to the "right to control the methods or details of doing the work, not control of the results." *Wells v. Whitaker*, 151 S.E.2d 422, 429 (Va. 1966); *accord Murphy v. Holiday Inns, Inc.*, 219 S.E.2d 874, 877 (Va. 1975). "Actual control . . . is not the test; it is the right to control which is determinative." *Perry v. Scruggs*, 17 F. App'x 81, 89 (4th Cir. 2001) (quotation marks omitted)). From an operational standpoint, it would not be unreasonable for a jury to conclude that CAIR National had the right to control the methods or details of Days's work. Upon being hired by CAIR-VA, Days participated in several training sessions on how to handle civil rights cases, including

one session held at CAIR National and a number of one-on-one follow-up sessions with Iqbal. And, as discussed above, all of the CAIR-VA civil rights cases that Days worked on were tracked by the national organization via CAIR National's central database. Finally, the role of Khalid Iqbal, who supervised Days while wearing two hats – one as CAIR National's operations director, and one as CAIR-VA's executive director – raises genuine questions about the extent to which CAIR National maintained or exerted control over Days.

Specifically, Iqbal's conduct upon discovering Days's misconduct provides evidence upon which a reasonable jury could conclude that CAIR National exerted control over Days. Notably, when Iqbal sought information from Days via email following the first accusation of misconduct, Iqbal used his *CAIR* title and contact information in his signature despite sending the email from his *CAIR-VA* account. It would not be unreasonable to infer from this evidence that Iqbal disciplined Days in his capacity as director of operations for CAIR National, and therefore that CAIR National both had the power to exercise control over Days and in fact exercised that power. Additionally, Iqbal exchanged emails with other CAIR National employees about how to address Days's misconduct. For example, Iqbal sought the CAIR National Director's input and waited for her approval before sending a letter to Days. A jury could infer from these emails that Iqbal's supervisors at CAIR National oversaw his management of Days.

And finally, CAIR National's handling of Days's client files after the exposure of his fraud is evidence that a reasonable jury could rely on in concluding that CAIR had control over Days. CAIR took possession of the CAIR-VA client files, and had its own personnel review those files

without first contacting the clients for permission to do so – conduct that would have constituted a breach of ethical duties unless CAIR National previously had the power to control Days's conduct with respect to those cases.

Viewing the evidence in the light most favorable to the Plaintiffs, and drawing all inferences in their favor, it would be reasonable to infer based on these facts, taken together, that CAIR National had the ability to control Days, and in fact exerted that control.

## IV.

For the foregoing reasons, we find that genuine issues of material fact exist as to whether or not Morris Days was the agent of CAIR National. We reverse the judgment of the District Court and remand for further proceedings.

*So ordered.*