# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Submitted March 19, 2012      Decided June 22, 2012

No. 11-7082

PATTON BOGGS LLP,
APPELLANT

v.

CHEVRON CORPORATION AND GIBSON, DUNN & CRUTCHER
LLP
APPELLEES

———

Consolidated with 11-7089

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:10-cv-01975)

———

*James E. Tyrrell Jr.*, *Anthony J. Laura*, *Eric S. Westenberger*, and *Charles E. Talisman* were on the briefs for appellant.

*Theodore J. Boutrous Jr.*, *Thomas H. Dupree Jr.*, and *John F. Bash* were on the brief for appellee. *Thomas G. Hungar* and *Andrea E. Neuman* entered appearances.

2

Before: SENTELLE, *Chief Judge*, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: This case is but a small part of a long-running and now sprawling international litigation battle in which various indigenous Ecuadorian groups claim that Chevron Corporation is liable for environmental harm caused in the Amazon over three decades. Patton Boggs LLP represents the plaintiffs and would like to continue to do so. The district court denied Patton Boggs both a declaratory judgment that it could not be disqualified from that representation and leave to amend its complaint with claims that Chevron and its counsel, Gibson, Dunn & Crutcher LLP, tortiously interfered with the firm's contract with its clients. For the reasons set forth below, we affirm the district court.

I

In 1993, indigenous Ecuadorian groups (the Ecuadorian Plaintiffs) filed suit against Chevron in the Southern District of New York. That suit was eventually dismissed in 2001 on grounds of *forum non conveniens*. In February 2011, an Ecuadorian court hearing a successor suit entered a multibillion dollar judgment against Chevron. Chevron has appealed that judgment in Ecuador and sued in tribunals around the world to prevent its enforcement. *See Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581 (S.D.N.Y. 2011) (discussing the underlying environmental dispute and the ensuing litigation).

To aid its defense against the Ecuadorian suit, beginning in 2009 Chevron filed multiple proceedings under 28 U.S.C. § 1782, which authorizes federal district courts to compel

discovery for use in foreign litigation. In November 2010, Patton Boggs appeared on behalf of the Ecuadorian Plaintiffs in one of those matters. Patton Boggs had recently acquired the Breaux Lott Leadership Group, a lobbying firm in Washington, D.C. that had provided services to Chevron on issues related to the litigation in Ecuador. (The record does not disclose the precise nature of those services.) Gibson, Dunn & Crutcher LLP sent Patton Boggs a letter expressing "grave concerns that [its] appearance in this matter constitutes a conflict of interest that could result in disqualification" because "Patton Boggs attorneys, former Senators Lott and Breaux, formerly represented Chevron in a substantially related matter." Def.'s Mot. to Dismiss Ex. A. Despite disavowing any intent to take immediate action, Chevron and Gibson Dunn reserved "the right to take any action we deem appropriate" in the future. *Id.*

The day after receiving Chevron's letter, Patton Boggs sued in the district court in Washington, D.C. seeking a declaratory judgment that it could not be disqualified from representing the Ecuadorian Plaintiffs in any current or future proceeding on the basis of Breaux Lott's prior relationship with Chevron. Compl. 10. Chevron moved to dismiss the suit, arguing it was not ripe because no one had asked any court to disqualify Patton Boggs. Chevron also urged the district court to use its discretion under the Declaratory Judgment Act and decline to exercise jurisdiction.

Before the district court ruled on Chevron's motion to dismiss, Patton Boggs sought leave to amend its complaint to add claims against both Chevron and Gibson Dunn for, among other things, tortious interference with contract.[1]

---

[1] Patton Boggs also asserted claims for civil conspiracy and tortious interference with an attorney-client relationship. The

Patton Boggs alleged that Chevron and its counsel had undertaken a series of abusive litigation tactics and engaged in a public campaign of false accusations that Patton Boggs was complicit in fraudulently obtaining the Ecuadorian judgment, all "aimed at forcing Patton Boggs to breach its contract with the Ecuadorian Plaintiffs with the ultimate aim to deprive the Ecuadorian Plaintiffs of counsel." Am. Compl. ¶ 75.

The district court dismissed Patton Boggs's declaratory judgment claim, holding it was premature. *Patton Boggs, LLP v. Chevron Corp.* (*Chevron I*), 791 F. Supp. 2d 13, 23-25 (D.D.C. 2011). And even if it were ripe, the court explained that it would nevertheless use its ample discretion under the Declaratory Judgment Act to decline jurisdiction. *Id.* at 25. The court also denied Patton Boggs leave to bring what the court concluded was a futile claim. Alleging conduct aimed at forcing but not actually causing a breach was simply not enough to make out a claim for tortious interference with contract. *Id.* at 20-21.

In response, Patton Boggs asked the court to reconsider its decisions, which the court did under Federal Rule of Civil Procedure 59(e). *See id.* at 27. The court again concluded that the more prudent use of its discretion under the Declaratory Judgment Act was to leave the question of disqualification to the various courts in which the § 1782 proceedings are pending. *Id.* at 27-29. As for the tort claim, Patton Boggs asserted that the district court used the wrong analysis by assessing the claim under the Restatement (Second) of Torts

district court denied Patton Boggs leave to pursue these claims, *see Patton Boggs, LLP v. Chevron Corp.* (*Chevron I*), 791 F. Supp. 2d 13, 21 (D.D.C. 2011), and the firm does not challenge those rulings on appeal.

§ 766, which requires a breach of contract, rather than § 766A, which does not and requires only allegations that its performance was made "more expensive or burdensome." But the court found that Patton Boggs had not, in fact, pled such a claim and held that its argument on reconsideration was new and therefore untimely. *Id.* at 30-31. Finally, as part of this same motion, Patton Boggs sought yet again to amend the complaint, this time expressly alleging a claim under § 766. But the court ruled once again that it was too late in the day to advance new legal theories. *Id.* at 32.

At the same time that it filed its motion for reconsideration, Patton Boggs took the unusual step of filing a new, separate complaint asserting claims identical to those in the original lawsuit.[2] The district court dismissed this new complaint, explaining that the duplicate claims were barred by issue or claim preclusion and that Patton Boggs had also failed to properly state a cause of action with its new § 766 theory. *See Patton Boggs, LLP v. Chevron Corp.* (*Chevron II*), 825 F. Supp. 2d 35, 38-42 (D.D.C. 2011).

Patton Boggs appealed each of these orders.

---

[2] Although Patton Boggs says it filed this duplicate complaint as a "protective measure," Appellant's Br. 9, the district court was not impressed. In fact, the court noted its sympathy for the defendants' argument that Patton Boggs had pursued the second suit "unreasonably and vexatiously," which would entitle the defendants to fees and costs under 28 U.S.C. § 1927, and stayed its hand "only because the bar for the imposition of fees and costs under § 1927 is extremely high." *Patton Boggs, LLP v. Chevron Corp.* (*Chevron II*), 825 F. Supp. 2d 35, 42 (D.D.C. 2011).

II

Patton Boggs argues on appeal that the district court abused its discretion by failing to exercise jurisdiction and take up the request for a declaratory judgment that Patton Boggs cannot be disqualified from representing the Ecuadorian Plaintiffs because of Breaux Lott's prior work for Chevron. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). As a result, in declaratory judgment actions "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288.[3]

Urging that "it would be impracticable . . . to resist disqualification in the numerous jurisdictions in which § 1782 proceedings are now pending and any future jurisdictions where Chevron continues to file these proceedings," Compl. ¶ 41, Patton Boggs seeks a declaration from the district court in Washington, D.C. that it is qualified to represent the Ecuadorian Plaintiffs in every jurisdiction where Chevron has or might initiate a § 1782 proceeding. But the district court thought that considerations of practicality cut the other way.

---

[3] We also note it is likely the district court lacked jurisdiction over this broad declaratory judgment request on ripeness grounds. *See Chevron I*, 791 F. Supp. 2d at 23-24. However, we need not address that question because we find no error in the decision of the district court to refuse to exercise jurisdiction even if it could. Had the district court instead agreed to exercise jurisdiction, we would of course be required to assess these other jurisdictional questions before reaching the merits of the dispute. *See Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361-62 (D.C. Cir. 2012).

Deciding whether the declaratory judgment is warranted would be complex and difficult because the applicable law varies from jurisdiction to jurisdiction. *Chevron I*, 791 F. Supp. 2d at 24 ("[T]he Court would need to decipher and apply the law of *every* jurisdiction where Chevron *might* seek Patton Boggs's disqualification — potentially every single state."). The resolution of the issue would turn on the law of the jurisdiction in which the § 1782 proceeding is brought and for that reason would be better resolved by the court where the proceeding is pending. *See also Groper v. Taff*, 717 F.2d 1415, 1418 (D.C. Cir. 1983) (explaining that a district court has primary responsibility for "supervising the members of its bar" and enforcing the ethical rules of its jurisdiction). Given this, the district court concluded that "to inform all other federal courts that Patton Boggs is qualified to represent the [Ecuadorian Plaintiffs] before those courts would be incredibly intrusive." *Chevron I*, 791 F. Supp. 2d at 25.

Patton Boggs argues that the district court's concerns were misguided, but we think they were spot on. All agree that any jurisdiction considering a motion to disqualify Patton Boggs would first determine whether the services Breaux Lott provided Chevron could be considered "legal" in nature. Patton Boggs contends that each jurisdiction would apply the law of the District of Columbia, which the district court here is uniquely qualified to apply, to decide that question. But Patton Boggs provides no support for its assertion that courts sitting in other jurisdictions would apply D.C. law, and not their own governing rules, and we see no reason to think they would. *See* MODEL RULES OF PROF'L CONDUCT R. 8.5(b)(1) (explaining that the rules to be applied to assess "conduct in connection with a matter pending before a tribunal" are "the rules of the jurisdiction in which the tribunal sits"); *accord* D.C. RULES OF PROF'L CONDUCT R. 8.5(b)(1); MD. LAWYER'S RULES OF PROF'L CONDUCT R. 8.5(b)(1); N.Y. RULES OF

PROF'L CONDUCT R. 8.5(b)(1). Further, even if Patton Boggs were correct that each court would need to ask first whether Breaux Lott provided Chevron legal services as defined under D.C. law, the ultimate determination "whether an attorney is competent to appear in a particular proceeding is properly a question for the presiding court to resolve." *Chevron I*, 791 F. Supp. 2d at 25. We agree with the district court "that it would overreach by adjudicating the propriety of Patton Boggs's appearance before other courts." *Id.* at 28.

## III

Patton Boggs argues that its original effort to amend the complaint stated a claim for tortious interference with contract under Restatement § 766A. Of course, if Patton Boggs is right about that, then the district court was wrong to say the claim was late because first brought in the Rule 59(e) motion. Our review of this issue proceeds in two steps. We first review *de novo* the district court's decision that Patton Boggs failed to plead a cause of action under § 766A. *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). If the § 766A argument is in fact "new," we then ask whether the district court abused its discretion under Rule 59(e) by refusing to permit it to become part of the complaint. *See Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004).[4]

---

[4] Patton Boggs is correct that had the district court excused its lateness and rejected the § 766A argument on the merits, we would review that decision *de novo*. But abuse of discretion is appropriate to review a decision about "*whether to consider*" a new argument. *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 n.9 (D.C. Cir. 1991). Here, the district court's explanation that it would reject the new argument on the merits "[e]ven if [it] were not untimely" is merely an alternate holding; it does not excuse Patton Boggs's untimeliness. *See Chevron I*, 791 F. Supp. 2d at 31; *see also GSS Group Ltd. v. Nat'l Port Auth.*, 2012 WL 1889384, at *5 (D.C. Cir.

The proposed amendment expressly stated that Patton Boggs was proceeding on a theory of breach of contract, and not on a claim of expense and burden. *See* Am. Compl. ¶ 75 ("The Defendants have engaged in improper offensive tactics aimed at forcing Patton Boggs *to breach its contract* with the Ecuadorian Plaintiffs." (emphasis added)); *cf. Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 834 (3d Cir. 2011) (finding a § 766A claim adequately pled where, unlike here, the pleadings made clear that the claimants "were attempting to invoke expense and delay, rather than nonperformance, as the origin of their damages").[5] Furthermore, Patton Boggs dispelled any doubts regarding what claim it raised when its "own reply brief laid out the precise formulation of tortious interference that it now argues the Court erred by employing." *Chevron I*, 791 F. Supp. 2d at 30-31. When Chevron argued that allegations of breach were required, Patton Boggs's reply was not to urge the contrary but instead to argue that it need only allege that Chevron was *attempting* to cause a breach. *Id.* at 31. Indeed, Patton Boggs cited the breach requirement and argued entirely within that framework. *See* Pl.'s Reply in Supp. of Mot. for Leave to Amend 12 ("Under D.C. law, tortious interference with contract has four elements . . . [one of which is] intentional procurement of [the contract's] breach by the defendant . . . ." (quoting *Sturdza v. United Arab*

May 25, 2012) ("A district court does not open the door to further consideration of a forfeited claim by giving an alternative, merits-based reason for rejecting it.").

[5] In that case, the complaint alleged that the defendant had "engaged in a course of action" that "was designed and calculated to delay and interfere with the permitting process for the construction" project the plaintiff sought to perform. *Barefoot Architect*, 632 F.3d at 834. Here, Patton Boggs alleged a course of action "aimed at forcing Patton Boggs to *breach its contract*." Am. Compl. ¶ 75 (emphasis added). The contrast is clear.

*Emirates*, 281 F.3d 1287, 1305 (D.C. Cir. 2002)) (internal quotation marks omitted)). No one — not the district court, not Chevron, not even Patton Boggs — suggested the complaint invoked § 766A until after the district court rendered its judgment and Patton Boggs recognized its mistake.

The district court committed no error in concluding that Patton Boggs failed to raise the § 766A argument until its Rule 59(e) motion. Rule 59(e) motions "need not be granted unless the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) (quoting *Nat'l Trust v. Dep't of State*, 834 F. Supp. 453, 455 (D.D.C. 1993)). Patton Boggs does not argue that any of these grounds applies, and none does. Because Rule 59(e) is not a vehicle to present a new legal theory that was available prior to judgment, *see Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004), the district court did not abuse its discretion in denying the motion.

## IV

In its new complaint, Patton Boggs sought relief based on allegations that Chevron and Gibson Dunn forced the Ecuadorian Plaintiffs to breach their contract with Patton Boggs. Again, we review the district court's dismissal for failure to state a claim *de novo*. *Rudder*, 666 F.3d at 794. To survive a motion to dismiss, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "must suggest a plausible scenario that shows that the pleader

is entitled to relief," *Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011) (quoting *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009)) (alterations and internal quotation marks omitted). Patton Boggs's complaint fails to do so.

D.C. law, which both parties assume applies, *see Chevron I*, 791 F. Supp. 2d at 20 (citing *In re Korean Air Lines Disaster*, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("[C]ourts need not address choice of law questions *sua sponte*.")), requires a plaintiff making a claim of tortious interference to establish "(1) the existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of the contract's breach, and (4) damages resulting from the breach," *Cooke v. Griffiths-Garcia Corp.*, 612 A.2d 1251, 1256 (D.C. 1992). As to the requirement of intentional procurement of breach, the new complaint states only that "Defendants have engaged in further misconduct by undertaking efforts to cut off the Ecuadorian Plaintiffs' source of funds, causing the Ecuadorian Plaintiffs to breach their contract with Patton Boggs by non-payment of Patton Boggs' legal fees and expenses." Compl. ¶ 90, *Chevron II*, 825 F. Supp. 2d 35. This is much too vague. It is unclear who Patton Boggs asserts breached what obligation. The claim that the Ecuadorian Plaintiffs breached their contract by "non-payment" is contradicted by the admission that Patton Boggs "never alleged that the Ecuadorian Plaintiffs were responsible for paying their litigation costs directly out of their own pockets." Appellant's Reply Br. 26. Furthermore, we do not know what Patton Boggs is alleging the defendants did to cut off the supposed "source of funds." And as the district court explained, "[T]he fact that Patton Boggs is no longer being paid does not establish that Chevron and Gibson Dunn are responsible for that outcome, let alone that they intentionally

caused it." *Chevron II*, 825 F. Supp. 2d at 42. We are left in the dark as to who breached what obligation and how, and the manner in which the defendants intentionally caused that breach. The complaint does not allege the requisite "plausible scenario" that could show Patton Boggs is entitled to relief. *Jones*, 634 F.3d at 595. We agree with the district court that the allegation is nothing but "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Chevron II*, 825 F. Supp. 2d at 42 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

V

For the foregoing reasons, the district court's orders are

*Affirmed.*