# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 19, 2016      Decided November 29, 2016

No. 15-7150

KELLY FOSTER,
APPELLANT

v.

SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., AND SUN
TRUST BANK SHORT AND LONG TERM DISABILITY PLANS,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01241)

---

*Denise M. Clark* argued the cause and filed the briefs for
Appellant.

*Gregory L. Arbogast* argued the cause for Appellees.
With him on the brief was *James T. Heidelbach.*

Before: ROGERS and TATEL, *Circuit Judges*, and
EDWARDS, *Senior Circuit Judge.*

Opinion for the Court filed by *Senior Circuit Judge*
EDWARDS.

EDWARDS, *Senior Circuit Judge*: This appeal raises two issues regarding the reach and application of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, with respect to private benefit plans. The first issue concerns the definition of "payroll practices" that are exempt from ERISA. The second addresses whether terms of the ERISA plan at issue in this case grant discretion to the plan administrator sufficient to warrant deferential review of the administrator's benefit determinations.

In July 2014, Appellant, Kelly Foster, sued Sedgwick Claims Management Services, Inc. ("Sedgwick") and Sun Trust Bank Short and Long Term Disability Plans (together "Appellees") under ERISA, 29 U.S.C. § 1132(a), to enforce her rights under short-term and long-term disability benefit plans that had been adopted by her employer, Sun Trust Bank ("SunTrust"). The District Court found that the short-term plan was a "payroll practice" exempted from ERISA's ambit by a Department of Labor regulation. Appellant initially conceded this point. *Foster v. Sedgwick Claims Mgmt. Servs., Inc.*, 125 F. Supp. 3d 200, 205 (D.D.C. 2015). Because Appellant's sole cause of action with respect to the short-term plan rested on ERISA, the District Court rejected Appellant's claim. The District Court additionally found that the long-term plan gave Sedgwick, the plan administrator, sole discretion to "evaluate" an employee's medical evidence and "determine" if the employee's condition meets the plan's definition of disability. *Id.* at 206–07. The District Court accordingly applied a deferential standard of review to Sedgwick's denial of long-term disability benefits sought by Appellant and concluded that the administrator had neither abused its discretion nor acted arbitrarily or capriciously in assessing Appellant's claim for benefits. *Id.* at 206–11. The District Court granted summary judgment to Appellees and dismissed Appellant's complaint. *Id.* at 211.

Appellant filed a motion for reconsideration. She admitted she had conceded that the short-term disability plan was exempt from ERISA during summary judgment, but argued that the District Court's embrace of this position constituted an error of law. The District Court rejected Appellant's attempt to raise a new legal theory in a motion for reconsideration when the same claim could have been asserted during summary judgment. The District Court denied the motion for reconsideration. *Foster v. Sedgwick Claims Mgmt. Servs., Inc.*, 159 F. Supp. 3d 11, 13–16 (D.D.C. 2015).

We affirm the District Court at each turn. First, we affirm the District Court's finding that the short-term disability plan is an ERISA-exempt "payroll practice" under Department of Labor regulations. Second, we hold that the District Court appropriately applied a deferential standard of review to the administrator's denial of benefits under the long-term disability plan because the terms of the plan unambiguously grant the administrator, and the administrator alone, the power to construe critical terms of the plan and to decide an employee's eligibility for benefits. Finally, we hold that the District Court did not abuse its discretion in denying Appellant's motion for reconsideration.

## I. BACKGROUND

## A. Statutory and Regulatory Background

Congress enacted ERISA to "promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (citations and internal quotation marks omitted). It found that employee benefit plans "affect[] the stability of employment and the successful development of industrial relations . . . [and are] an

important factor in commerce because of the interstate character of their activities." 29 U.S.C. § 1001(a). Under ERISA, a benefit plan participant may sue "to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Overall, ERISA represents a "'careful balancing' between ensuring fair and prompt enforcement of rights under a plan" and encouraging the creation of such plans. *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (citation and internal quotation marks omitted).

Under 29 U.S.C. § 1135, the Secretary of Labor is authorized to prescribe regulations deemed necessary or appropriate to carry out the provisions of ERISA. Pursuant to this authority, Department of Labor regulations exempt certain "payroll practices" from ERISA's ambit. An exempt payroll practice includes "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons." 29 C.F.R. § 2510.3-1(b)(2).

## B. Factual and Procedural Background

We review *de novo* the District Court's order granting summary judgment. *See Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). In doing so, we view the evidence and draw all reasonable inferences in favor of the non-moving party. *See id.* The material facts in this case, which are undisputed, are summarized below.

SunTrust provides its employees with both short-term and long-term disability benefit plans. Appellee Sedgwick

administers both plans on behalf of SunTrust. According to SunTrust's Health and Welfare Benefits Handbook ("Benefits Handbook"), Joint Appendix ("JA") 19–36, 45–59, SunTrust's short-term disability plan "provides benefits if an eligible employee is unable to work because of an approved disability." *Id.* at 25. Benefits are paid from SunTrust's "general assets." *Id.* "Full-time employees receive a combination of [short-term] benefits paid at 100% and 60% of base pay for their first illness/injury occurrence in each calendar year." Short-Term Disability Summary, JA 38. Employees are deemed to have an approved disability if they are "not able, solely because of disease or injury to perform the material duties of their own occupation." *Id.* at 39. Employees' claims for short-term disability must be supported by "objective medical documentation." *Id.* The claims administrator determines whether employee claimants meet the definition of "disability" and whether their medical documentation is sufficient to support a claim for benefits. *Id.* at 38.

SunTrust's long-term disability plan, which is part of a larger Employee Benefit Plan and funded through a trust, "provides financial assistance to eligible employees who are totally unable to work, as determined by the claims administrator, due to an illness or injury after 180 days." Benefits Handbook, JA 46. The long-term plan uses substantially the same definition of disability as the short-term plan, but requires an employee to be "totally disabled as determined by the claims administrator" for 180 days. *Id.* To make this determination, the "claims administrator will evaluate the medical documentation submitted on [the employee's] behalf and determine if [his/her] condition meets the Plan's definition of Total Disability." *Id.* at 48. Sedgwick approves a claim for long-term disability benefits "[o]nce satisfactory proof that [the employee] ha[s] been Totally

Disabled for 180 calendar days has been provided to the claims administrator." *Id.* at 56. If Sedgwick denies a claim, it must give the specific reason for denial and the "specific Plan or policy provisions on which the denial is based." *Id.* Employees have a right to appeal Sedgwick's initial denial of a claim to a different decision-maker at Sedgwick, who makes a final decision. *See id.* at 56–57.

SunTrust employed Appellant Kelly Foster as a Mortgage Loan Closer until September 2012. In January and August 2012, Appellant submitted claims for short-term disability benefits for missing work due to a variety of ailments. Sedgwick denied her claims, citing Appellant's failure to provide sufficient "objective medical documentation" in support of her claims. SunTrust terminated Appellant on September 25, 2012, because of her absences from work. Appellant appealed Sedgwick's denial of her short-term disability benefits claim. Sedgwick upheld its denial on March 29, 2013. In October 2013, Appellant submitted a claim for long-term disability benefits. Sedgwick denied this claim, as well, and Appellant appealed again. Sedgwick upheld this denial on January 27, 2014.

In July 2014, Appellant sued Appellees under ERISA, 29 U.S.C. § 1132(a), to enforce her rights under both the short-term and long-term disability benefit plans. Appellees moved for summary judgment. Appellees argued, and Appellant conceded, that the short-term disability plan was an ERISA-exempt payroll practice and thus Appellant could not seek review of her denial under ERISA. The District Court independently found that since the short-term disability plan was paid from SunTrust's general assets and was "entirely separate" from the Employee Benefits Plan, it was "properly characterized as a payroll practice" and exempt from ERISA. *Foster*, 125 F. Supp. 3d at 205. Since Appellant's "Complaint

expressly invoke[d] ERISA alone," *id.*, the District Court had no alternative cause of action to adjudicate, and it granted Appellees summary judgment as to the short-term disability plan, *see id.* at 205–06.

As to the long-term disability plan, the District Court found the plan documents vested Sedgwick with broad discretionary authority, triggering a deferential standard of review under *Firestone*, 489 U.S. at 115. *Foster*, 125 F. Supp. 3d at 206–07. Applying that standard, the District Court found Sedgwick had not abused its discretion nor acted arbitrarily or capriciously in denying Appellant's claim for long-term disability given her failure to submit sufficient objective medical documentation. *Id.* at 207–10. The District Court granted Appellees' motion for summary judgment in full on August 28, 2015.

Appellant timely moved for reconsideration. Among other arguments, she asserted that, in spite of her concession, the District Court committed an error of law in finding that the short-term disability plan was exempt from ERISA. The District Court denied her motion for reconsideration on December 1, 2015.

Appellant appealed to this court on December 3, 2015. Appellant's notice of appeal designated only the order granting Appellees summary judgment and did not specifically designate the order denying her motion for reconsideration. However, based on Appellant's electronic submissions to the Clerk's Office, the court's docket entry on December 3, 2015, identified Appellant's notice of appeal "as to 34 Order on Motion for Reconsideration . . . , [and] 28 Order on Motion for Summary Judgment." The docket entry references to "34" and "28" are hyperlinked to each appealed order in the District Court docket. On January 13, 2016,

Appellant submitted her civil docketing statement, Rulings under Review certificate, statement of issues, and the Underlying Decision in Case — each of which designated both the order granting Appellees summary judgment and the order denying Appellant's motion for reconsideration. The parties fully briefed both orders.

## II. ANALYSIS

### A. Scope of the Appeal

As a threshold matter, we reject Appellees' claim that we lack jurisdiction to consider Appellant's challenge to the order denying her motion for reconsideration because she failed to designate it in her notice of appeal. The Court's records indicate that Appellant timely and properly gave notice that she appealed from both orders.

We have jurisdiction to review a mistakenly undesignated order where "the intent to appeal . . . can be fairly inferred from appellant's notice (and subsequent filings) and the opposing party is not misled by the mistake." *Messina v. Krakower*, 439 F.3d 755, 759 (D.C. Cir. 2006) (internal quotation marks omitted) (quoting *Foretich v. ABC*, 198 F.3d 270, 274 n.4 (D.C. Cir. 1999)); *see Brookens v. White*, 795 F.2d 178, 180–81 (D.C. Cir. 1986) (per curiam). Appellant timely filed her notice of appeal on December 3, 2015, and gave sufficient notice in five contemporaneous appellate filings from December 3, 2015, through January 13, 2016, that her appeal included a challenge to the District Court's denial of her motion for reconsideration, in addition to its grant of Appellees' motion for summary judgment. That provided adequate notice to Appellees. *See Messina*, 439 F.3d at 759 (holding that a Rule 28(a)(1) filing provided adequate notice of the intent to appeal from an undesignated order);

*Sinclair Broad. Grp., Inc. v. FCC*, 284 F.3d 148, 158 (D.C. Cir. 2002) (deeming statement of issues filed thirty-four days after the petition for review to be "contemporaneous," but motion for stay filed ninety-one days later not "contemporaneous"). Appellees do not claim to have been misled as to the scope of the appeal and fully briefed the issues. Our jurisdiction therefore extends to the order denying Appellant's motion for reconsideration.

**B.  The District Court's Finding that the Short-Term Disability Plan is an Exempt "Payroll Practice"**

The District Court found that SunTrust's short-term disability plan is a "payroll practice" exempt from ERISA. We agree.

ERISA applies to private "employee benefit plans." 29 U.S.C. § 1001. The statute defines an employee benefit plan as "an employee welfare benefit plan" or "an employee pension benefit plan." 29 U.S.C. § 1002(3). An "employee welfare benefit plan" includes:

> any plan, fund, or program which was . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical . . . care or benefits, or benefits in the event of sickness, accident, disability . . . .

29 U.S.C. § 1002(1).

There is no dispute that without the Department of Labor's regulatory exemption, SunTrust's short-term

disability benefit plan would constitute an "employee welfare benefit plan" under ERISA. However, the Department of Labor exempts from ERISA certain "payroll practices," including

> [p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons.

29 C.F.R. § 2510.3-1(b)(2). The Supreme Court has upheld this "payroll practices" exemption, *see Massachusetts v. Morash*, 490 U.S. 107, 116–19 (1989), and Appellant does not contest the legality of the regulation.

In response to Appellees' motion for summary judgment in the District Court, Appellant conceded that the short-term disability benefit plan was a payroll practice. The District Court nevertheless independently evaluated the plan and concluded that it was a payroll practice because it was paid from SunTrust's general assets and was "entirely separate" from SunTrust's ERISA-covered Employee Benefits Plan. We have no basis to overturn the District Court's judgment on this point.

SunTrust's short-term disability plan clearly fits within the regulatory definition of "payroll practices." It is payment of an employee's normal compensation; it is paid from the employer's general assets; and it is paid on account of time during which the employee is absent for medical reasons. *See* 29 C.F.R. § 2510.3-1(b)(2). Indeed, it appears SunTrust drafted its short-term disability plan to match the regulatory exemption. Since the parties do not dispute these fundamental aspects of the short-term disability plan, we might end our

inquiry here. Appellant, however, reversed her position after the District Court granted summary judgment for Appellees.

In her appeal to this court, Appellant now insists that "[t]he record demonstrates that the relationship between SunTrust and Sedgwick and the administration of the short-term disability benefits establishes an on-going administrative scheme which subjects the Plan to ERISA." Br. for Appellant at 5. There are two problems with this argument: First, the argument comes too late because it was not properly raised and preserved during the proceedings before the District Court. *See Singleton v. Wulff*, 428 U.S. 106, 120–21 (1976) (noting that appellate courts generally refrain from considering an issue not passed upon below). Second, the argument rests on a flawed assumption.

As noted above, before the District Court, Appellant conceded that the short-term plan was exempt from ERISA. And it would not matter that Appellant sought to raise the issue in her motion for reconsideration because the District Court properly rejected her claim as untimely. *See infra* Part II.D. Therefore, the argument that she now raises was never addressed by the District Court. That resolves the matter. And in any case, Appellant's belated claim is misguided. *See Singleton*, 228 U.S. at 121 (noting that the "matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals").

Appellant principally relies on *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1 (1987), in support of her contention that the presence of an ongoing administrative scheme in SunTrust's short-term plan compels the conclusion that it is a non-exempt ERISA plan. Neither *Fort Halifax* nor any of the other cases cited by Appellant support this claim. The Court

in *Fort Halifax* merely held that "a Maine statute requiring employers to provide a one-time severance payment to employees in the event of a plant closing" was not preempted by ERISA. *Id.* at 3; *see id.* at 3–4. The Court noted that because the state law at issue only governed a one-time benefit provision, it did not constitute a "plan" potentially governed by ERISA nor implicate the need for ERISA preemption. *Id.* at 11–12, 14–15. The Court, however, did not address plans that are exempt from ERISA pursuant to Department of Labor regulations.

In *Fort Halifax* the issue was whether the provision of a certain type of benefit should be construed as a plan that is within the compass of ERISA. The question here is whether a benefit program that clearly falls within the compass of ERISA is nevertheless exempt from ERISA pursuant to Department of Labor regulations. The answer here is yes. SunTrust's short-term disability benefit plan falls squarely within the exemption under 29 C.F.R. § 2510.3-1(b)(2). *See Stern v. Int'l Bus. Machs. Corp.*, 326 F.3d 1367, 1373 (11th Cir. 2003) (applying 29 C.F.R. § 2510.3-1(b) to a benefit program that would "clearly qualify as an ERISA plan *but for* its specific exemption by a reasonably justified regulation").

Appellant also argues that the fact that a benefit is paid from general assets does not necessarily exempt a plan from ERISA. *See*, *e.g.*, *Fort Halifax*, 482 U.S. at 7 n.5 ("[ERISA] has been construed to include severance benefits paid out of general assets, as well as out of a trust fund"). That may be true, but it is irrelevant in this case. SunTrust's short-term plan presents a tri-fold match to the exemption under 29 C.F.R. § 2510.3-1(b)(2): paying normal wages, from general assets, on account of work missed due to medical reasons. We do not need to decide whether one factor is more important than another, nor how many must be met in order for the

exemption to apply. Here, all factors are met, including the nature of the benefits and the source of the funds. *See Morash*, 490 U.S. at 120.

In sum, the short-term disability plan is clearly exempt from ERISA. Therefore, the District Court properly granted Sedgwick summary judgment as to that plan.

## C. The Deference Due to the Plan Administrator's Benefit Determinations Under the Long-Term Disability Plan

The District Court applied a deferential standard of review in assessing the plan administrator's denial of benefits to Appellant under the long-term disability plan. Appellant asserts that the District Court should have undertaken *de novo* review of her ERISA claim under 29 U.S.C. § 1132(a)(1)(B). We disagree.

A claim under § 1132(a)(1)(B) is reviewed *de novo* except where the plan vests the administrator with "discretionary authority to determine eligibility for benefits *or* to construe the terms of the plan." *Firestone*, 489 U.S. at 115 (emphasis added). When the terms of a plan confer such discretion, an administrator's denial of benefits is reviewed under an abuse of discretion or arbitrary and capricious standard, a standard which, in this particular context, we have referred to as "reasonableness." *Moore v. CapitalCare, Inc.*, 461 F.3d 1, 11 (D.C. Cir. 2006). On the record before us, we conclude that the District Court properly applied a deferential standard of review because the long-term disability benefit plan here vests Sedgwick with discretion to construe disputed terms of the plan *and* determine eligibility for benefits.

In reaching this conclusion, we have looked for guidance from both *Firestone* and the Court's later decisions in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), and *Conkright*. The Court's later cases confirm that, in assessing a claim under § 1132(a)(1)(B), a court must consider "trust law, the terms of the plan at issue, and the principles of ERISA." *Conkright*, 559 U.S. at 512; *see also Metro Life Ins. Co.*, 554 U.S. at 110–11. Having done this, we conclude that the unambiguous grant of discretion to the administrator of the SunTrust long-term disability plan triggers deferential review of the administrator's assessments of benefit claims under the plan.

### 1.   Principles of Trust Law

In looking to trust law, we "analogize a plan administrator to the trustee of a common-law trust; and . . . consider a benefit determination to be a fiduciary act." *Metro. Life Ins.*, 554 U.S. at 111. In *Firestone*, the Supreme Court concluded that deference was owed to plan administrators, acting as trustees, "in the exercise of a *discretion vested in them by the instrument* under which they act." 489 U.S. at 111 (quoting *Nichols v. Eaton*, 91 U.S. 716, 724–25 (1875)). In *Conkright*, the Supreme Court found trust law "unclear on the narrow question" before it, whether an administrator's prior mistake overrode the necessity of deferential review, but noted that "if the settlor who creates a trust grants discretion to the trustee, it seems doubtful that the settlor would want the trustee divested entirely of that discretion simply because of one good-faith mistake." 559 U.S. at 514.

Here, general principles of trust law support our conclusion that the terms of SunTrust's long-term disability plan effectively limit judicial review of administrator determinations to reasonableness, not *de novo*. The

Restatement (Third) of Trusts recognizes that a trustee's powers may be express or implied. RESTATEMENT (THIRD) OF TRUSTS § 85 reporter's note cmt. a (2005). And leading modern treatises "indicat[e] considerable flexibility" in ascertaining the extent of a trustee's power as implied by the terms of a trust instrument. *Id.* cmt. a. For instance, "[i]f a settlor has directed the trustee to accomplish a certain objective, he must be deemed to have intended that the trustee use the ordinary and natural means of obtaining that result." *Id.* reporter's note cmt. a (quoting GEORGE G. BOGERT & GEORGE T. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 551 (rev. 2d ed. 1980)). In other words, a reviewing court may determine that the settlor intended for "the trustee to have such power, although he did not in so many words grant the authority." *Id.* (quoting GEORGE T. BOGERT, TRUSTS § 88 (6th ed. 1987)). Likewise, an ERISA plan document may show that the employer intended for the administrator to have discretionary powers to construe terms or determine eligibility if the terms of the plan direct the administrator to obtain specified objectives of the plan without specifying the means by which to achieve them.

### 2. The Terms of SunTrust's Long-Term Disability Plan

In assessing the terms of the SunTrust long-term disability plan, we look first to the Summary Plan Description. Although the Summary is not itself legally binding, *CIGNA Corp. v. Amara*, 563 U.S. 421, 437–38 (2011), it provides important information for beneficiaries about the plan. In *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, we noted that a Summary Plan Description is an "ERISA-mandated, plain-language document upon which plan participants may rely to understand their benefits." 644 F.3d 427, 433 (D.C. Cir. 2011). We therefore concluded that a

Summary may "be examined to determine the appropriate standard of review." *Id. Pettaway* does not take account of the Court's decision in *CIGNA Corp.*, but we do not view the decision issued by this court to be at odds with the direction given by the Supreme Court. A court may look at a Summary for guidance, but it must remain mindful that the terms of a Summary "do not themselves constitute the *terms* of the plan." *CIGNA Corp.*, 563 U.S. at 438.

The Summary Plan Description covering the SunTrust long-term disability benefit plan references the Health & Welfare Benefits Handbook, which in turn details the terms of the plan and explains the administrator's authority. The parties do not dispute that the terms of the Benefits Handbook are binding. *See* Br. for Appellant at 7; Br. for Appellees at 3.

The Handbook makes it clear that Sedgwick — and Sedgwick alone — has the power to construe disputed terms of the plan and determine eligibility for benefits. For instance, the plan states: "The claims administrator has 45 calendar days in which to make a determination regarding whether your medically-documented claim entitles you to a Long-Term Disability benefit. . . . Once satisfactory proof that you have been Totally Disabled for 180 calendar days has been provided to the claims administrator and your application for LTD benefits has been approved, you will receive a written notice of the claim approval." JA 55–56.

The plan elsewhere states:

- "If you are approved for LTD benefits, your premiums . . . will be waived for as long as you continue to be totally disabled as determined by the claims administrator." JA 46.

- "The claims administrator will evaluate the medical documentation submitted on your behalf and determine if your condition meets the Plan's definition of Total Disability." JA 48.

- "You are disabled if, due to injury, illness, or pregnancy supported by objective medical documentation, you meet the following definition of disability as determined by the claims administrator:
     o You are unable to perform each of the material duties of the occupation you regularly perform for SunTrust . . . ." JA 48.

- "[Benefits end on] [t]he date that you fail to provide satisfactory proof of continuation of total disability." JA 52.

- "For purposes of receiving [long-term] benefits, whether you are disabled will be determined based on objective medical evidence provided to the claims administrator about your condition." JA 57.

Moreover, when the administrator denies a claim, it must list the specific reason for the denial and the "specific Plan or policy provisions on which the denial is based." JA 56. In exercising this authority, the administrator must of course interpret and apply the terms of the plan.

Finally, under the long-term plan, any appeal of the administrator's denial of benefits is to the administrator. No one but the administrator determines whether an employee is eligible for benefits. And there is no detailed rubric by which the administrator is constrained in determining whether the definition of disability is met. Instead, the definition is broad, leaving it to the administrator to construe critical terms and

phrases such as "objective medical documentation," "unable to perform," "material duties," and "satisfactory proof."

In our view, these unambiguous grants of discretion to the administrator of the SunTrust long-term disability plan compel deferential review of the administrator's assessments of benefit claims under the plan. Prevailing case law supports this conclusion.

In *Conkright*, the plan granted the administrator "broad discretion in making decisions relative to the Plan." 559 U.S. at 512 (internal quotation marks omitted). In *Block v. Pitney Bowes Inc.*, we surveyed similar "[e]mpowering language" other courts had found to vest discretion in the administrator. 952 F.2d 1450, 1453 (D.C. Cir. 1992). This language included statements such as: where "any construction [of the agreement's provisions] adopted by the Trustees in good faith shall be binding," *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568 (1985) (citation and internal quotation marks omitted); where trustees had "power to construe [plan] provisions" and "any construction adopted by the [t]rustees in good faith is binding," *Exbom v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1141 (7th Cir. 1990); where administrators had power "[t]o determine all benefits and resolve all questions pertaining to the administration, interpretation and application of Plan provisions," *De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir. 1989); and where the plan charged administrators to determine "'which Employees are eligible to participate in the Plan,' and [to] 'provide all parties dealing with the Plan an interpretation of Plan provisions on request,'" *Curtis v. Noel*, 877 F.2d 159, 161 (1st Cir. 1989). *See Block*, 952 F.2d at 1453. The long-term disability plan at issue here, when read as a whole, grants comparable authority to the plan administrator.

In *Block* itself we considered an explicit grant of discretion: the administrator had all power "to interpret and construe the Plan [and] to determine all questions of eligibility and the status and rights of participants." *Id.* at 1452. Nevertheless, we concluded, "[w]hat counts, in sum, is the *character* of the authority exercised by the administrators under the plan." *Id.* at 1454 (emphasis added). In interpreting *Firestone* we said the Supreme Court "surely did not suggest that 'discretionary authority' hinges on incantation of the word 'discretion' or any other 'magic word.'" *Id*. at 1453. Instead, *Firestone* "directed lower courts to focus on the breadth of the administrators' power," *id.*, and agreed with the Fourth Circuit that it "need only appear on the face of the plan documents that the fiduciary has been 'given [the] *power* to construe disputed or doubtful terms'—or to resolve disputes over benefits eligibility," *id.* (quoting *De Nobel*, 885 F.2d at 1187).

The grant of discretion to Sedgwick under the SunTrust long-term disability plan is not as explicit as the language in *Block* and the cases cited therein. Nonetheless, we find the language here is more than sufficient to satisfy the standards set forth by the Court in *Firestone*, *Metro. Life Ins.*, and *Conkright.* Furthermore, in *Block* we cited with approval the First Circuit's decision in *Curtis*. *See* 952 F.2d at 1453. In *Curtis*, the court held that provisions stating that the plan administrator shall determine "which Employees are eligible to participate in the Plan," and shall "provide all parties dealing with the Plan an interpretation of Plan provisions on request" were sufficient to justify deferential review of the administrator's determinations. *Curtis*, 877 F.2d at 161. Our decision in *Block* also states:

> Under *Firestone*, reasonableness review is in order if the administrator has "discretionary authority to

determine eligibility for benefits *or* to construe the terms of the plan." 489 U.S. at 115. . . . Thus, . . . power to "interpret and construe" the plan *or* . . . power to make "final and binding" decisions . . ., standing alone, would probably meet the *Firestone* test for deferential review.

*Block*, 952 F.2d at 1453 n.4.

*Block* thus instructs that "discretionary authority" does not "hinge[] on incantation of the word 'discretion' or any other 'magic word.'" *Id.* at 1453. In this case, we find that SunTrust's long-term disability plan vested Sedgwick with discretion through multiple provisions of the plan sufficient to limit review. We therefore conclude that, according to the terms of the plan, the District Court correctly applied a deferential standard of review in assessing the plan administrator's denial of benefits to Appellant under the long-term disability plan.

### 3. Principles of ERISA

Lastly, we turn to the principles of ERISA to ensure that the District Court appropriately applied a deferential standard of review to the long-term disability plan. *See Conkright*, 559 U.S. at 512. "ERISA represents a careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Id.* at 517 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215 (2004)) (internal quotation marks omitted). Because administrative and litigation costs can "unduly discourage employers from offering [ERISA] plans in the first place," ERISA encourages the creation of benefit plans and maintaining high levels of benefits in existing plans by promoting efficiency and minimizing administrative and

litigation costs. *Id.* (citation and internal quotation marks omitted). ERISA's purposes include "assuring a predictable set of liabilities" through uniform standards and a uniform remedial scheme. *Id.* (citation and internal quotation marks omitted).

"*Firestone* deference protects these interests and, by permitting an employer to grant primary interpretive authority over an ERISA plan to the plan administrator, preserves the 'careful balancing' on which ERISA is based." *Id.* The Supreme Court reasoned that *Firestone* deference promoted ERISA's goals of efficiency, predictability, and uniformity "by encouraging resolution of benefits disputes through internal administrative proceedings," allowing the "employer [to] rely on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from *de novo* judicial review," and "helping to avoid a patchwork of different interpretations of a plan" spanning multiple jurisdictions. *Id.* If employers could not adopt plans that give administrators discretion, it "might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them." *Id.* (quoting *Fort Halifax*, 482 U.S. at 11).

*Firestone* instructs us that when discretion is not clearly granted to the administrator, *de novo* review is appropriate because, in that case, deferential review "would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." 489 U.S. at 113–14. However, the Court was equally clear in saying that "[n]either general principles of trust law nor a concern for impartial decisionmaking . . . forecloses parties from agreeing upon a narrower standard of review." *Id*. at 115.

We apply ordinary principles of contractual interpretation in assessing the terms of an ERISA plan. *See M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015); *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 611–12 (2013); *see also Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 615 (6th Cir. 2002). As we have already indicated, the plan documents here evidence an intent on the behalf of the settlor, SunTrust, to vest the trustee, Sedgwick, with discretionary power to construe the terms of the plan and determine eligibility for benefits. SunTrust obviously intended to grant broad authority to Sedgwick and to rely on Sedgwick's expertise in administering the plan. Consequently, reviewing Sedgwick's denial of benefits to Appellant with due deference, as the employer intended, preserves ERISA's careful balancing, provides SunTrust with efficiency in relying on Sedgwick and predictability in uniform liability, and preserves the incentive to continue providing ERISA benefits to its employees.

By giving Sedgwick the power to "make a determination" as to whether a claimant is "entitle[d]" to benefits, "evaluate" the submitted "objective medical documentation," decide whether a claimant's proof is "satisfactory," "determine[]" whether a claimant is "totally disabled," selecting which duties are "material" and determining whether the claimant is "unable to perform them," and "approve[]" applications by claimants, SunTrust unambiguously gave Sedgwick the power to interpret material terms of the plan and determine eligibility for benefits. JA 46–48, 52. We therefore conclude that the District Court properly applied a deferential standard of review because, reading the plan as a whole, it plainly vests Sedgwick with discretion to construe disputed terms of the plan *and* determine eligibility for benefits. The District Court did not err in reviewing the Sedgwick's benefit determinations under

a deferential standard of review and in concluding that Sedgwick had not abused its discretion or acted in an arbitrary or capricious way in denying Appellant's claim for long-term disability benefits.

## D. Denial of Motion for Reconsideration

We also affirm the District Court's denial of Appellant's motion for reconsideration. A motion for reconsideration "is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) (citations and internal quotation marks omitted). None of these factors are present here.

Appellant acknowledges that she conceded the short-term disability plan was exempt from ERISA during summary judgment proceedings. The only ground that Appellant offered to support her motion for reconsideration was that her concession was an error. When a party first argues an unavailing theory of liability, and then attempts to argue an alternative or contrary position in a motion for reconsideration, this constitutes neither new evidence nor a clear error of law sufficient to support a motion for reconsideration. *See Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 402–03 (D.C. Cir. 2012). Moreover, as discussed above, the District Court independently and correctly found that the short-term disability plan was exempt from ERISA.

Appellant argues in the alternative that even if the short-term plan is not an ERISA plan, it "relates to" the long-term plan, which is an ERISA plan. *See* Br. for Appellant at 15. As a result, she contends ERISA relief must be available to her

because a state-law breach of contract claim would not survive ERISA's broad preemption. *See id.* (citing 29 U.S.C. § 1144). In other words, Appellant asserts that because eligibility under the long-term — ERISA — plan is intertwined with eligibility under the short-term — non-ERISA — plan, the two are "related," thereby preempting any non-ERISA claims for relief. *See id.* at 16–18. However, as the District Court noted, "the Supreme Court has been clear that the 'relate to' language in ERISA's preemption clause only excludes state-law causes of action in which 'the existence of an ERISA plan . . . is a critical factor in establishing liability.' Yet that is not the case here, for nothing in the [long-term plan] would have any bearing on the merits of a breach-of-contract claim based on the denial of [short-term] benefits." 159 F. Supp. 3d at 14 (citation omitted) (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139–40 (1990)). The District Court correctly ruled that "because eligibility for [short-term] benefits is not at all affected by the [long-term plan], no state-law cause of action based on the [short-term plan] 'relates' to the [long-term plan] in such a way that it would be preempted by ERISA." *Id.* at 15. The court thus concluded that, even if not waived, Appellant's new theories about the short-term plan provided no basis for overturning the court's dismissal.

Therefore, the District Court did not err in denying Appellant's motion for reconsideration. We affirm its denial.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the District Court.

*So ordered.*